IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BAPTIST MEMORIAL HOSPITAL –
DESOTO, INC., PLAINTIFF,

VS. CIVIL ACTION NO. 2:05CV166-P-B

CRAIN AUTOMOTIVE, INC., DEFENDANT.

## ORDER

This matter comes before the court upon Plaintiff's Motion in Limine to Exclude Expert Testimony of Robert W. Frost [103-1]. After due consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

As an initial matter, the court concludes that the instant motion to exclude expert testimony is timely since the court has already ruled in this case that Paragraph 13 of the Case Management Order compared with Local Rule 7.2(B)(3) creates an ambiguity as to when motions in limine to exclude expert testimony are due. Rule 7.2(B)(3) states "Unless otherwise ordered by the Case Management Order, all case-dispositive motions and motions challenging an opposing party's expert shall be filed no later than fifteen calendar days after the discovery deadline." The Rule on its face states that it can be trumped by language in the Case Management Order. Paragraph 13 of the Case Management Order in this case states in pertinent part: "The deadline for motions in limine is ten days before the pretrial conference; the deadline for responses is five days before the pretrial conference." Since a motion to exclude expert testimony is technically a motion in limine, Paragraph 13 indeed trumps Local Rule 7.2(B)(3) in this case. For future reference, the court has modified the language in Paragraph 13 to exclude *Daubert* motions from conventional motions in limine.

Furthermore, the plaintiff's argument that Crain's response to the instant motion is without merit since the court granted Crain until December 22, 2006 by which to file their response in its December 20, 2006 Order.

The court now turns to the hospital's primary argument that Frost is unqualified to render his opinion pursuant to Fed. R. Evid. 702.

Essentially, Frost opines that "the charges assessed by Baptist Memorial Hospital – Desoto, Inc., relating to Denis Brown's hospital stay in November of 2003, are excessive and unreasonable. Specifically, the total amount of charges on the bill that I consider excessive and unreasonable is $20,825.81." Frost Report, p. 3. Attached to his report is a spreadsheet comparing actual charges with the amounts he opines should be the reasonable charges. Each instance of allegedly excessive charges is given a code representing the explanation why the charge in question is excessive.

As stated in the Advisory Committee's Note on 2000 Amendment of Fed. R. Evid. 702, "[i]n Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." "[A] trial judge *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case.*"*Kumho*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (emphasis in original).

The hospital argues in its motion to exclude his testimony that Frost is not qualified to offer this testimony for the following primary reasons: (1) he has never worked for a hospital or in the hospital industry; (2) he has no background in accounting or finance; (3) he does not state that he has

2

ever personally performed a hospital bill review or audit; (4) he has not provided expert testimony or trial testimony within the last four years; (5) "audits" of hospital bills usually involve investigation into whether the billed services or products at issue were actually provided, not whether the charges were reasonable; and (6) he admits that he delegated the actual review of the billed charges to an independent contractor nurse.

In response, Crain argues that he is well-qualified to render his opinion and disputes each of the hospital's arguments to the contrary. According to his affidavit and expert report, Frost is the "President and CEO of Principal Performance Group, Inc. which performs medical bill reviews and/or audits for the purpose of finding billing errors and other overcharges." He has an M.B.A. which included numerous courses in accounting. He states in his affidavit that he has "personally been involved in approximately 900 reviews of [hospital] bills for reasonableness of charges." Affidavit ¶ 1.

Regarding the nurse who assisted him in rendering his opinion, he avers in his report on page 2 that:

> In this matter, PPG was requested to conduct a medical bill review, and then chart review. The data relied upon included the medical bills submitted for Dennis Brown. In addition, I have reviewed the Crain Plan Document and the Novasys PPO Agreement. The review of the billed charges (UB-92 with itemization) and medical chart was delegated to Nancy M. Craig, a nurse having a Bachelor of Science in Nursing, and a Masters of Health Services Administration and over 24 years of professional health care administrative experience.
>
> Ms. Craig has worked with PPG, Inc. since the late 90's as an independent contractor conducting, among other things, medical audits and claims analysis as was performed in this case. Ms. Craig analyzed the Brown medical bills and prepared appropriate spreadsheets analyzing the billed charges, disputed charges, and prepared comprehensive spreadsheets with explanations, and sources for reference information as back-up regarding her analysis. The data relied upon was the medical charge provided by Baptist Memorial Hospital – Desoto, Inc.

In further regard to the nurse assisting him, Frost states in his affidavit that:

> My review in this case is based, in part, on data compilations made by a nurse, which were provided to me. In other words, I delegated and instructed the clerical function of gathering the pertinent information I needed to review to a trained nurse specialist who is familiar with and knowledgeable of the process of comparing the price charged or billed by the medical provider with various industry reference standards such as what other providers in a geographic region charge, the average wholesale price, federal reimbursement rates for Medicare and Medicaid, and the list price with respect to the services, drugs, and supplies in issue. I have checked the information on which my opinions are based for accuracy and know it to be reliable and useful in analyzing whether the hospital bills in this case are excessive, which they certainly are in this case.

Affidavit, ¶ 2.

Having reviewed Frost's report and his qualifications, his affidavit attached to Crain's response, and Crain's response brief, the court concludes that there is nothing necessarily nefarious about using a qualified nurse to assist a person with an MBA who is the President and CEO of a company whose work includes evaluating medical bills for reasonableness. Frost avers that he reviewed her work for accuracy and that he ultimately rendered the subject opinions. The court further concludes that Frost appears qualified to offer his opinion regarding the reasonableness of the subject bill. The plaintiff is free to cross-examine Frost during his testimony as to any perceived flaws in his reasoning.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's Motion in Limine to Exclude Expert Testimony of Robert W. Frost [103-1] is hereby **DENIED**.

**SO ORDERED** this the 1st day of February, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE