**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.**                                  **PLAINTIFF**

**v.**                                                                        **Civil Action No. 2:05CV166-SA**

**CRAIN AUTOMOTIVE, INC.**                                                                                              **DEFENDANT**

## JUDGMENT

The bench trial in this case was held on June 23 and 24, 2008. The following constitutes the findings of fact and conclusions of law by the Court:

Crain Automotive Holdings, LLC, established and maintained a self-funded employee welfare benefit plan (the "Crain Plan") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Dennis Brown, as the spouse of an employee of Crain Automotive Holdings, was covered by the Crain Plan. Dennis Brown was admitted to and treated at Baptist Memorial Hospital-Desoto ("BMHD" or "Hospital") November 6 through 8, 2003, and was entitled to receive medical benefits under the Crain Plan applicable to such inpatient hospital services.

BMHD is a Preferred Provider under the Crain Plan, pursuant to an agreement entered into between BMHD and the Baptist Health Services Group. The Baptist Health Services Group contracted with NovaSys Health Network, the Crain Plan preferred provider organization, to provide discounted health care services to persons covered by NovaSys' Health Benefit Plans. That contract provides that Baptist Memorial Hospitals located in Shelby County, Tennessee, and DeSoto County, Mississippi would discount all charges for inpatient and outpatient services by 15% to NovaSys' Health Benefit Plans, such as the Crain Plan. The agreement also provides:

> If payment is not made within thirty (30) days following receipt of all information needed, the discount or other limitation on compensation due the Participating Provider

shall be waived, and the Participating Provider shall be entitled to the full amount of its usual and customary charge for the services for which payment was not timely made.

The Crain Plan defines a "Preferred Provider" as "a physician, hospital, or ancillary service provider which has an agreement in effect with the Preferred Provider Organization (PPO) to accept a reduced rate for services rendered to covered persons." This is known as the negotiated rate.

Brown incurred charges in the amount of $41,316.95 for his admission to and services provided by BMHD during November 6-8, 2003. Before Dennis Brown was discharged, he executed a General Conditions Admissions Record, which included an Assignment of Insurance Benefits section, pursuant to which Brown assigned to BMHD his right to recover benefits under the Crain Plan.

The Hospital submitted a claim to CoreSource, the Crain Plan's claim processor, for those benefits as Dennis Brown's assignee. BMHD contends that the initial claim, sent on December 3, 2003, was discounted the negotiated fifteen percent. On or about January 23, 2004 and January 30, 2004, CoreSource, which served as Plan Supervisor for the Crain Plan, prepared an Explanation of Benefits ("EOB") for Brown's expenses. CoreSource forwarded these EOBs to Crain. According to the contract between CoreSource and Crain, the employer is "solely responsible for funding the payment of benefits and expenses under the plan."

Crain did not fund payment of the subject claim because it questioned the reasonableness of the hospital charges. BMHD, CoreSource, and Larry Crain engaged in concerted communications over an eleven month period to get BMHD's claim paid. Payment of the hospital charges was never made to BMHD. Crain does not question or contest that all services and supplies provided to Dennis Brown during November 6-8, 2003, were medically necessary.

The only contractual agreement between BMHD and the Crain Plan is the rights under the plan

assigned to the hospital by the beneficiary, Dennis Brown. Crain contends that BMHD is not entitled to payment as a PPO because there was never any direct contract between the entities. Therefore, under the Crain Plan, Crain would only be responsible for charges that are "customary and reasonable." Crain asserts that $41,316.95 is unreasonable and presented expert testimony in an attempt to establish that the charges were unreasonable.

Crain's calculations of the amount owed to BMHD is as follows:

| | |
|---|---|
| Expert's determination of the reasonable and customary charge: | $20,491.14 |
| Amount Brown owes to meet his coinsurance expense limit | - $1,565.87 |
| 15% PPO reduction | - $2,838.79 |
| Crain contends it owes to Baptist | = **$16,086.48** + attorneys fees |

BMHD asserts that as Crain failed to pay its claim for benefits within thirty (30) days, it is entitled to the full amount of its usual and customary charge for the services provided pursuant to the Preferred Provider Agreement between BHSG and NovaSys. Had Crain released the checks to BMHD within 30 days of receiving all information, BMHD asserts it would have been owed $33,553.54 ($41,316.95 - $1,565.87 [which Brown owed] - 15% PPO discount). However, because Crain waived the 15% discount by failing to pay within 30 days, Crain now owes:

| | |
|---|---|
| Amount of Bill | $41,316.95 |
| Amount Brown owes to meet his coinsurance expense limit | - $1,565.87 |
| BMHD contends Crain owes to it | = **$39,751.08** + 8% interest + attorneys fees. |

## *Conclusions of Law*

BMHD filed suit under 29 U.S.C. § 1132(a)(1)(B) of ERISA which provides that a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plans. BMHD sued as an assignee, not a third party provider of medical care. The Crain Plan allows assignments of benefits to hospitals and physicians. Moreover, assignees of beneficiaries have standing under ERISA and, therefore, may bring suit as a statutory beneficiary under 29 U.S.C. § 1132 (a)(1)(B). See Hermann Hosp. v. MEBA Med. & Ben. Plan, 959 F.2d 569 (5th Cir. 1992).

The record established at trial shows the following history of communication between the pertinent parties at issue here:

12/3/2003 - 1/28/2004 - BMHD and CoreSource exchanged a series of phone calls and faxes regarding an invoice on Brown's stents. Apparently, CoreSource was looking at the wrong contract, and the invoices were not really needed.

1/28/2004 - CoreSource indicated to BMHD that they were sending two checks, one for $24,611.54, another for $8,942.00, equaling $33,553.54, the total amount of Brown's medical expenses with the fifteen percent discount.

2/6/2004 - BMHD called CoreSource and left a message regarding the status of the account.

2/11/2004 - CoreSource returned the call and stated that it is waiting on the employer to release payment.

2/16/2004 - CoreSource called to report that the claim was being reprocessed at fifteen percent off the total charge and asked for an additional thirty days for payment.

2/19/2004 - BMHD had not received the checks as of this date. CoreSource asked for an additional thirty days.

3/16/2004 - CoreSource called and said two payments are being issued.

3/17/2004 - CoreSource called and stated that the authorization has not been received to release payment, but Crain had acknowledged that it would be soon.

4/8/2004 - CoreSource told BMHD that Crain called and left a message and asked when he would be able to pay the claim.

4/12/2004 - Larry Crain called BMHD and commented that the hospital was "price gouging" and "he wanted to make an offer to settle this." BMHD explained that he was already getting a discount and he would not be getting another discount. He asked to speak with a supervisor and was transferred to the Director's secretary.

5/24/2004 - BMHD called CoreSource regarding the status of the claim and called Larry Crain and left a message.

5/24/2004 - BMHD left another message for Larry Crain.

5/25/2004 - Larry Crain called BMHD and stated that he was not going to pay BMHD until all his questions were answered. BMHD expressed that services were provided and billed so no other discounts were available. Larry Crain responded that BMHD needed to contact their attorney.

6/21/2004 - The BMHD record indicates that "the key person does not want to pay this bill." Therefore, it is noted to switch the claim to self-pay and bill the patient.

6/25/2004 - The claim was not changed to self-pay as of this date.

7/12/2004 - BMHD's phone records indicate that another group is contacted that will have a conference call with CoreSource regarding the Brown claim.

7/13/2004 - CoreSource alerted BMHD that it was still waiting on Larry Crain to allow the release of the checks for payment.

7/21/2004 - BMHD left a message on the CoreSource answering machine regarding the status of the claim.

7/27/2004 - BMHD left a message on the CoreSource answering machine regarding the status of the claim. CoreSource returned the call and said the two checks were mailed out on 7/12/2004.

7/28/2004 - CoreSource tells BMHD that it mailed the two checks back to Crain. BMHD called Crain Automotive and left a message.

8/10/2004 - BMHD spoke with Larry Crain who stated he was holding the checks until BMHD reviewed the claim because of high charges billed. Moreover, he avers that he has no problem paying the claim, he just wanted to negotiate a payment settlement.

9/22/2004 - BMHD called and left a message with CoreSource to check the status of the claim.

10/13/2004 - BMHD left a message on the CoreSource answering machine regarding the status of the claim.

A review of all documents admitted into the record reveals that the Crain Plan never issued a formal denial letter to BMHD as required under Department of Labor regulation 29 C.F.R. § 2560-503-1(f)(2)(iii)(B) (providing that the plan shall notify a claimant of an adverse benefit determination within a reasonable period of time, but not later than thirty days after receipt of the claim). Moreover, the Crain Plan itself provides that upon denial of a claim, the covered person or authorized representative shall be provided with a written Notice of Benefit Denial outlining the reason for denial, a description of the review procedure and applicable time limits, and a statement of the claimant's rights of appeal. No evidence of such written Notice of Benefit Denial is in the record. Nor was any evidence admitted that Larry Crain or CoreSource orally denied BMHD's claim on Brown's behalf. In fact, Larry Crain's statement that he intended to pay the claim in August of 2004, indicates that the claim was never denied *per se*. Therefore, technically and practically, BMHD's claim for benefits was never denied.

The Crain Plan also provides that the claimant may appeal an adverse decision by the Plan fiduciary within one hundred eighty days, and that the Plan Administrator will then notify the covered person in writing of the appeals decision within sixty calendar days of receipt of the written request for appeal.

However, because the claim was never denied, no exhaustion requirement arose out of the Crain Plan. The Plan provides access to a review on appeal for denied claims, and also provides that "[i]f a claim for benefits is denied or ignored in whole or in part, the participant may file suit in a state or federal court." The Department of Labor has determined that where a plan fails to follow claims procedures,

> a claimant shall be deemed to have exhausted administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the

6

Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560-503(1)(I). Thus, BMHD did not fail to exhaust its administrative remedies because its actions were prescribed by the Crain Plan and authorized by the Department of Labor regulations.

The Crain Plan states:

No action in law or equity shall be brought to recover on the benefits from the Plan . . . after the expiration of two (2) years from the date the expense was incurred, or one (1) year from the date a completed claim was filed, whichever comes first.

The Defendant has asserted that BMHD's claim for benefits is barred by the statute of limitations provided in the Crain Plan. Crain contends that a "completed claim" was filed by December 3, 2003; thus, BMHD filed this suit outside the statute of limitations prescribed by the Plan as suit was not filed until August 25, 2005.

Like many federal laws, the cause of action for benefits due under an ERISA plan does not contain a statute of limitations, nor does it specify when the statute begins to run. See 29 U.S.C. § 1132(a)(1)(B). As a default, courts faced with such omissions borrow the state law limitations period applicable to claims most closely corresponding to the federal cause of action. See Jones v. Wal-Mart Stores, Inc., 1:06cv129, 2007 U.S. Dist. LEXIS 71575, 2007 WL 2782880 (N.D. Miss. 2007) (noting that for wrongful denial of benefit claims, the applicable statute of limitations is Mississippi's three year catch-all statute of limitations found at Section 15-1-49 of the Mississippi Code). However, "[w]here a plan designates a reasonable, shorter time period . . . that lesser limitations schedule governs." Harris Methodist Fort Worth v. Sales Support Servs. Inc., Employee Health Care Plan, 426 F.3d 330, 337 (5th Cir. 2005). "[C]ontractual limitations periods in ERISA actions are enforceable, regardless of state law, provided they are reasonable." Northlake Reg. Med. Ctr. v. Waffle House, 160 F.3d 1301, 1304 (11th

Cir. 1998) (cited with approval in <u>Dye v. Assocs. First Capital Corp. Long-Term Disability Plan</u>, 243 Fed. Appx. 808, 809 (5th Cir. 2007)). Because the Plan in this case provides that "no [legal] action shall be brought after the expiration of . . . one (1) year from the date a completed claim was filed," the Court must determine whether that shorter period is reasonable.

The Fifth Circuit has recognized and approved other Circuits holding as reasonable limitations periods as short as ninety days. <u>See</u> <u>Dye</u>, 243 Fed. Appx. at 810 (citing with approval a ninety day contractual limitations period triggered by plan's decision on administrative appeal, <u>Northlake Reg. Med. Ctr.</u>, 160 F.3d at 1303, and a thirty-nine month contractual limitations period from completion of the claim appeal process, <u>Doe v. Blue Cross Blue Shield of Wisconsin</u>, 112 F.3d 869, 874-75 (7th Cir. 1997)). In <u>Dye</u>, the Fifth Circuit noted that a one hundred twenty day limitation period was reasonable as the plan required prompt notification to the employee of a decision on appeal and the period did not begin to run until after the disposition of the internal appeal process.

The Crain Plan's limitations periods are not based on the accrual of a cause of action, but on the date a completed claim was filed. Mickey Benefield, BMHD controller and the employee responsible for accounting functions of BMHD, claims that once the UB-92 was submitted to the insurance carrier, BMHD considered the claim "completed." The UB-92 was submitted on November 13, 2003. If the Court agreed with Crain that as of May 25, 2004, BMHD was aware that their claim was denied, and if BMHD appealed their claim within the time limits established under the Crain Plan, BMHD would have only eighteen days remaining in the statute of limitations to draft a complaint and file a lawsuit for judicial review. However, as noted above, Crain's representations on May 25, 2004, did not establish that the claim was denied, therefore, under the statute of limitations Crain seeks to enforce now, BMHD would have one month from the time of its last documented conversation with Crain on October 13, 2004, until

8

November 13, 2004, before the statute of limitations expired.

An ERISA cause of action does not accrue until a claim of benefits has been made and formally denied. See Hall v. Nat'l Gypsum Co., 105 F.3d 225, 230 (5th Cir. 1997). If this Court were to recognize the Crain Plan's one year statute of limitations accruing at the time a "completed claim" was filed, we would feasibly be approving a framework that starts the clock on its participants' claims before the participants can even file suit. In this situation, benefit plans would have the incentive to delay the resolution of their participants' claims, because every day the plan took for its decision-making would be one less day that a claimant would have to review the plan's final decision, decide whether to challenge it in court, and prepare a civil action if need be. A plan which did not reach a final decision until after the statute of limitations had run would deprive a participant of the right to file a civil claim at all. Under the facts of this case, the Crain Plan contractual limitations period of one year from the date of a completed claim was filed is unreasonable.

Even though this portion of the Plan's contractual limitations period is unreasonable, BMHD still had to comply with the two year limitations period starting from the date the expense incurred. Neither party is challenging this part of the limitations period as unreasonable, therefore, this Court will not address whether it is or is not. Brown incurred the expenses on November 6-8, 2003, and BMHD filed this suit on August 25, 2005, within the two year statute of limitations period prescribed in the Crain Plan. Therefore, BMHD's claim is not barred by the statute of limitations.

*A. Standard of Review*

In the case *sub judice*, Crain Automotive Holdings has established a self-funded employee welfare benefits plan. According to the terms of the plan document, Crain, as the employer, is the named fiduciary of the Plan. Thus, Crain is self-interested, and "potentially benefits from every denied claim."

Vega v. Nat'l Life Ins. Servs. Inc., 188 F.3d 287, 295 (5th Cir. 1999). Further, according to the Crain Plan,

> the employer maintains discretionary authority to interpret the terms of the Plan, including but not limited to, determination of eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan; any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

In determining the standard of review of a plan administrator's denial of benefits decision, the U.S. Supreme Court has noted that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). The Court further stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Id. at 115, 109 S. Ct. 948.

> The Fifth Circuit has held:
>
> In a situation where the administrator is conflicted, we will give less deference to the administrator's decision. In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. Although the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial.

Vega, 188 F.3d at 299. Moreover, the abuse of discretion standard requires that the administrator's factual determinations be supported by substantial evidence. Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc., 168 F.3d 211, 215 (5th Cir. 1999). An administrator's decision will be considered "arbitrary only if [it is] 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" Id. (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d

822, 828-29 (5th Cir. 1996)).

This Circuit has also established a two-step process to determine whether the plan administrator's discretion was abused. First, the Court must determine the legally correct interpretation of the plan. Wildbur v. Arco Chem. Co., 974 F.2d 631, 637-38 (5th Cir. 1992). The Fifth Circuit outlined the three considerations in making this decision:

> (1) whether the administrator has given the plan a uniform construction;
>
> (2) whether the interpretation is consistent with a fair reading of the plan; and
>
> (3) any unanticipated costs resulting from different interpretations of the plan.

Id. (citing Jordan v. Cameron Iron Works, Inc., 900 F.2d 53, 56 (5th Cir.), *cert. denied*, 498 U.S. 939, 111 S. Ct. 344, 112 L. Ed. 2d 308 (1990)). "If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. Id. Three factors are important to this analysis:

> (1) the internal consistency of the plan under the administrator's interpretation;
>
> (2) any relevant regulations formulated by the appropriate administrative agencies; and
>
> (3) the factual background of the determination and any inferences of lack of good faith.

Id. (citing Batchelor v. Int'l Brotherhood of Elect. Workers Local 861 Pension & Retirement Fund, 877 F.2d 441, 445-48 (5th Cir. 1989)). The Wildbur Court went on to say that "[a]lthough the fact that an administrator's interpretation is not the correct one does not in itself establish that the administrator abused his discretion," however, "[w]hen his interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." Id. (quoting Batchelor, 877 F.2d at 445).

Here, even though there was no *per se* denial, the standard of review will be the same.[1] Thus, the Court will evaluate whether Crain abused its discretion in delaying payment or refusing to pay on the basis of its interpretation that BMHD's charges were unreasonable.

The Crain Plan provides, "The Plan will not provide benefits . . . to the extent that the charges exceed customary and reasonable amount or exceed the negotiated rate as applicable." Based on this language that the charges not exceed a "customary and reasonable amount," Larry Crain determined that BMHD's claim on behalf of Brown in excess of $41,000 was unreasonable. Larry Crain testified that when CoreSource provided him a list of the claims made under the self-funded Crain Plan, he would investigate those claims over $5,000. In his investigation of Brown's claim, Crain admitted that upon receiving the corrected EOB of January 30, 2004, he felt that the charges attributable to the Plan, over $24,000 with the discount, were excessive based on his experiences and different claims he had seen in the past. Crain noted that when he looked at the figure requested by CoreSource, it "raised a red flag" to him. Crain testified that he did not realize at the time of his investigation that he was already receiving a percentage discount under the agreement between NovaSys and BMHD; however, Crain did acknowledge that he knew that NovaSys had contracted and established a pricing arrangement with a network of providers for his employees. Crain also testified that during his investigation of Brown's claim, he did not have access to Brown's medical records, did not have knowledge about Dennis Brown's condition or medical situation, did not know what specific services were provided to Brown, did not

---

[1]This Court hesitates to review the administrator's decision or lack of decision *de novo* due to the underlying policies and purposes of ERISA. See Metro. Life Ins. Co. v. Glenn, — U.S. —, 128 S. Ct. 2343, 2350, 171 L. Ed. 2d 299 (June 19, 2008) (noting that ERISA imposes "higher-than-marketplace" quality standards on insurers in that the Act requires administrators to discharge their duties in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries of the plan." (citing 29 U.S.C. § 1104(a)(1))).

request specific information from the hospital about the claims and services provided, and did not talk to Mr. or Mrs. Brown regarding the procedures or services.

Moreover, Crain admitted that he had never been a hospital administrator, never established charges for a hospital or health care provider, nor ever worked in a hospital or health care setting. Crain also confessed, "I know that I don't have a background . . . in evaluating this, but I think I have a business background and experience to make reasonable judgments about charges." Crain's experience in this field was reduced to one particular incident that he could recall. He testified that prior to Brown's claim being filed, another employee filed a claim for $500,000 on the Crain Plan for a twenty-one day hospital visit in Arkansas. Crain acknowledged that the claim was a "big issue for us." In negotiating with the hospital in that case, the Crain Plan was able to reduce the amount owed by half, thereby limiting their liability to $250,000. Crain was unable to recall whether the hospital in that situation was a preferred provider or whether there was a negotiated rate between the Crain Plan and the provider. The next claim filed over the arbitrary $5,000 limit after this $500,000 claim was the Brown claim. Crain very candidly admitted throughout his testimony that his concern was costs and cost management as the Crain Plan was a self-funded plan.

After BMHD filed this cause of action in federal court, Crain contacted Robert Frost, who performs medical bill audits, for affirmation that BMHD's charges were indeed unreasonable. Frost's opinions are unpersuasive for determination of whether Crain abused its discretion for two principal reasons: (1) Larry Crain did not contact Robert Frost until June of 2006, well over two years after Larry Crain determined the charges were "unreasonable;"and (2) Larry Crain established the "reasonableness standard" to be used in the calculations that Frost used to determine whether the hospital's charges were excessive or not. Because Robert Frost lacked credibility to give his opinions as to whether the charges

were reasonable or not, those opinions are not relied on heavily by this Court.

The Plan language that Crain relied on in this trial is found in a section entitled "Exclusions" which provides that "[t]he Plan will not provide benefits . . . to the extent that the charges exceed customary and reasonable amount **or** exceed the negotiated rate as applicable." (emphasis added). The operative "or" here seems to indicate that the charges may not exceed either the customary and reasonable amount or the negotiated rate but fails to mandate compliance with both options; in essence, Crain's "or" is not an "and." BMHD established that it contracted a negotiated rate with NovaSys that was applicable to all claims paid within thirty days of filing. Moreover, Larry Crain acknowledged that NovaSys was the preferred provider organization that negotiated on behalf of the Crain employees for discounts on medical services. Therefore, to the extent that Crain relied on this "Exclusions" provision to delay payment of Brown's claim to BMHD, and did not maintain a uniform claim determination process, Crain's interpretation of the Plan language was legally incorrect. Further, the internal inconsistency with which Crain determined those benefits and the evidence of a lack of good faith to determine the viability of those claims leads the Court to determine that Larry Crain's decision to delay payment to BMHD was arbitrary and capricious, and thus, an abuse of discretion. Accordingly, Crain Automotive Holdings owes to BMHD the undiscounted amount of medical treatment and services stemming from Dennis Brown's November 6-8 stay at the BMHD facility minus any amount Brown owes to meet his coinsurance expense limit for the 2003 year.

Although ERISA does not expressly provide for prejudgment interest awards, such awards are permitted under 29 U.S.C. § 1132(a)(3)(B) (allowing "other appropriate equitable relief"). Mansker v. TMG Life Ins. Co., 54 F.3d 1322 (8th Cir. 1995); Cottrill v. Sparrow, Johnson & Ursillo, 100 F.3d 220 (1st Cir. 1996); Ford v. Uniroyal Pension Plan, 145 F.3d 613 (6th Cir. 1998). Moreover, "an award of

14

prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation." Hansen v. Continental Ins. Co., 940 F.2d 971, 984 n. 11 (5th Cir. 1991). Awards of prejudgment interest and attorneys' fees in ERISA case is within discretion of district court and may only be reversed for abuse of discretion. Schake v. Colt Indus. Oper. Corp. Severance Plan, 960 F.2d 1187 (3d Cir. 1992).

The Court may therefore exercise its discretion to award prejudgment interest here. In doing so, the Court notes that Plaintiff has been denied access to funds owed them for a significant period of time. To compensate them for this loss and to encourage plan administrators to resolve disputes quickly and fairly without recourse to litigation, an award of prejudgment interest is appropriate. In accordance with Mississippi Code Section 75-17-1(1) and as interpreted by the Fifth Circuit, the Court finds today that the proper rate of prejudgment interest for the Defendant is eight per annum compounded annually. See Exxon Corp. v. Crosby-Miss. Resources, 40 F.3d 1474 (5th Cir. 1995) (citations omitted).

Defendants are also free to file a motion for attorneys' fees as the prevailing party in this case.

*Conclusion*

Crain Automotive Holdings failed to deny BMHD's claim for benefits as assignees of Dennis Brown. As such, BMHD cannot be deemed to have failed to comply with the Crain Plan exhaustion requirements. Moreover, the Crain Plan's statute of limitations beginning the date of accrual before Plaintiff's right to recover benefits is ripe as unreasonable. As such, Plaintiff did file within the two year statute of limitations, and thus, their claim is not barred.

Due to Larry Crain's testimony regarding the inconsistency with which he decided to pay or not pay claims made under his self-funded insurance plan, the plain meaning of the Plan language itself, and the overall concern on Crain's part to reduce costs to the self-funded plan, Crain Automotive abused its

15

discretion in delaying payment of the BMHD claim. Because they failed to pay BMHD the negotiated rate within the contracted time frame, Crain owes Baptist the full undiscounted amount of the service and treatment provided to Dennis Brown on November 6-8, 2003. Crain may deduct from that amount the amount Dennis Brown owed to meet his coinsurance expense limit. Thus, Crain owes BMHD $39,751.08 with prejudgment interest accruing from March 1, 2004,[2] at a rate of eight percent.

SO ORDERED, this the  9th  day of September, 2008.

                                           **/s/ Sharion Aycock**
                                           **U.S. DISTRICT JUDGE**

---

[2] This date is thirty days after the corrected EOB was submitted to Crain Automotive on January 30, 2004.