**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**BAPTIST MEMORIAL HOSPITAL-
DESOTO, INC.**                                                                                    **PLAINTIFF**

**v.**                                                                       **CIVIL ACTION NO. 2:05cv166-SA**

**CRAIN AUTOMOTIVE, INC.**                                                           **DEFENDANT**

ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Presently before the Court is Plaintiff's Motion for Attorneys' Fees [159]. From its review of all matters made a part of the record of this case, as well as applicable law, and being thus fully advised in the premises, the Court finds that the Plaintiff's motion should be granted in part and denied in part. The Court specifically finds as follows:

On September 9, 2008, this Court entered an Amended Judgment awarding $39,751.08 plus prejudgment interest from March 1, 2004, to the date of the Order to Baptist Memorial Hospital - Desoto (BMHD). In that Judgment, the Court determined that Crain Automotive's ("Crain") self-funded Plan's delay in payment on the basis that their employee's hospital bills were unreasonable was an abuse of discretion. Moreover, the Court held that BMHD was not barred from suit due to their inability to exhaust administrative remedies, nor were they barred by the statute of limitations found in the Crain Plan. At the conclusion of the Judgment, this Court noted that "Plaintiff is also free to file a motion for attorneys' fees as the prevailing party in this case."

*Standard for Awarding Attorneys' Fees*

The Employee Retirement Income Security Act of 1974 ("ERISA") provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.

§ 1132(g)(1). The Fifth Circuit has adopted five factors for courts to consider in guidance of that discretion:

> (1) the degree of the opposing party's culpability or bad faith;
>
> (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
>
> (3) whether an award of attorneys' fees would deter the other person from acting under similar circumstances;
>
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> (5) the relative merits of the parties' positions.

Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980).

Crain's employee, Brown, was admitted to and incurred charges from BMHD from November 6 through 8, 2003. BMHD is a preferred provider under the Crain Plan, and therefore, had contractually bound themselves to a negotiated rate with the Crain Plan participants. The Hospital submitted this negotiated-rate compliant claim to Crain Plan's claims processor. Larry Crain, owner of Crain Automotive and administrator of the Crain Plan, refused to pay the hospital because he questioned the reasonableness of the hospital charges. The process which Larry Crain utilized to determine whether these charges were unreasonable is pertinent here. Crain did not request an itemization of expenses of Brown's medical services, did not submit the bill to an expert to determine if the charges were customary charges, nor did Crain tender to BMHD the amount he believed was reasonable, $16,086.48, and make BMHD seek the remainder of those charges against the patient. Instead, Larry Crain testified that he only looked into claims over $5,000 and that BMHD's claim "raised a red flag." Moreover, Crain testified that he did not realize at the time of his investigation that he was already receiving a percentage discount under the agreement between

NovaSys and BMHD; however, Crain did acknowledge that he knew that NovaSys had contracted and established a pricing arrangement with a network of providers for his employees. Crain also testified that during his investigation of Brown's claim, he did not have access to Brown's medical records, did not have knowledge about Dennis Brown's condition or medical situation, did not know what specific services were provided to Brown, did not request specific information from the hospital about the claims and services provided, and did not talk to Mr. or Mrs. Brown regarding the procedures or services. Crain very candidly admitted throughout his testimony that his concern was costs and cost management as the Crain Plan is a self-funded plan. Therefore, after reviewing the pleadings, hearing testimony, and weighing the credibility of the witnesses, this Court determined that Larry Crain abused his discretion as plan administrator by unjustifiably refusing to pay BMHD's claim. Based on the Court's determination as summarized, this Court finds that Crain's degree of culpability warrants an imposition of attorneys' fees.

By Amended Judgment, this Court determined BMHD to be entitled to $56,388.26, which is the awarded $39,751.08 plus prejudgment interest. BMHD has filed an affidavit attesting to attorneys' fees and costs expended in the amount of $234,576.73. If this Court were to award those fees in their entirety, the Crain Plan's total liability would equal $290,964.99.

Crain, in its response to the motion for attorneys' fees, did not attempt to argue that it would be unable to satisfy such a large award. The Crain Plan covers over four hundred employees. In trial, Larry Crain gave testimony of another claim he had denied or refused to pay for $500,000 because of its' "unreasonableness." He stated that that amount of money was a "big issue for us." However, Crain was able to negotiate the price down to $250,000, which he felt was reasonable.

Thus, this Court finds that Crain's silence as to its ability to pay, and Larry Crain's testimony that the Plan covered a $250,000 liability previously, that the Crain Plan could sustain and satisfy

such an award.

Self-funded plan administrators have a duty to uniformly interpret that Plan language, consistently give a fair reading to the Plan, and interpret the Plan in accord with legal principles. Wilbur v. Arco Chem. Co., 974 F.2d 631, 637-38 (5th Cir. 1992). This Court determined based on the facts and testimony at trial that Larry Crain has not performed his function as plan administrator uniformly. Thus, an imposition of attorneys' fees may encourage him to develop uniform procedures in interpreting the language of his Plan, investigatory methods for determining if the charges are in line with negotiated rates, and a reasonable way to determine what contracts the Crain Plan has with certain medical providers. Moreover, an award of attorneys' fees may encourage the Crain Plan to keep accurate records thus preventing Plan participant exposure to liabilities for covered medical bills due to the Plan's attempts to reduce its costs. Accordingly, the third factor weighs in favor of imposing legal fees against Crain.

While neither party seems to acknowledge the fourth prong of the Bowen analysis, the Court must address whether this case presented a significant legal question regarding ERISA itself or was brought on behalf of all plan participants or beneficiaries. This case was not presented on behalf of all participants and did not resolve any significant legal questions in regard to ERISA. However, this case did present a plethora of legal disputes regarding ERISA, in particular, limitation periods in ERISA-governed plans, the standard of review for self-interested plan administrators, ERISA exhaustion requirements, and standing under the Act. Therefore, even though the entire case was not premised on a significant ERISA legal question, this factor does weigh slightly in favor of awarding attorneys' fees because of the many procedural aspects of this case which implicated ERISA.

As noted above, and throughout the Amended Judgment, after hearing the testimony and

reviewing all the filings of this case, this Court determined that Larry Crain's decision to delay payment to BMHD was arbitrary and capricious. Throughout his response to the motion at issue here, Crain argues that he continually requested information from BMHD that they refused to provide. However, there is no proof other than Crain's testimony that any information was requested and unprovided. Larry Crain kept no records of conversations, nor of his efforts to resolve the dispute between the Crain Plan and BMHD timely and efficiently. Thus, this Court determined and reaffirms here that the Hospital prevailed on all counts.

As all factors weigh in favor of awarding attorneys' fees, this Court determines that under Bowen, attorneys' fees are recoverable by BMHD.

Once the Court determines that attorneys' fees are awardable, the court must determine the amount to be awarded by examining the reasonable hourly rate and reasonable number of hours spent on litigation and multiplying the two numbers together to reach the "lodestar" amount. Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997). The lodestar amount is then adjusted upward or downward depending upon the following factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether the relationship is longstanding; and (12) awards made in similar cases. Johnson, 488 F.2d at 717-19. The Court's Johnson analysis "need not be meticulously detailed to survive appellate review." In re High Sulfur Content Gasoline Prods. Liab. Litig., 517 F.3d 220, 228-

29 (5th Cir. 2008) (citations omitted). If the district court has articulated and clearly applied the correct criteria, the Fifth Circuit "will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." Id.

Crain does not dispute the reasonableness of the hourly rate that BMHD introduced. However, they do claim that BMHD's attorneys' hours expended should be greatly reduced based on the dismissal of two other defendants, the filing of unsuccessful motions, the fact that BMHD hired Tennessee counsel assumingly unfamiliar with Fifth Circuit law, and the fact that the case was a simple plan interpretation case, not a complex ERISA matter as claimed by BMHD. Crain contends that BMHD's attorneys' fees should be reduced to $23,000 based on their affiant's declaration of reasonable time for this case.

While the Court agrees that attorneys' fees should be awarded in this case, $234,576.73 is an unreasonable award in this situation. As noted above, this case did not present novel issues of complex ERISA litigation. The claim was more of a contract dispute under ERISA that involved several smaller procedural issues with which to deal. Therefore, the issues were not so complex to warrant such an extraordinary amount of attorneys' fees. Although BMHD did prevail on the merits of this claim, the amount involved was only $39,751.08. The Court finds that the requested fee of $234,576.73, at almost six times the awarded costs of this litigation, is unreasonable.

As the Supreme Court has noted, determining reasonable hours includes some exercise of "billing judgment" to eliminate hours that are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). It is the Court's duty to determine the number of hours reasonably expended by plaintiff's counsel; and the Court concludes that the hours submitted by plaintiff's counsel should be reduced in the following manner,

to account for excessive or redundant work.

The Court notes that twelve attorneys worked on plaintiff's case, out of two different offices. The work for which they seek fees spans three years. Apparently the need to coordinate plaintiff's litigation efforts among the three main attorneys and two offices has required a good deal of excessive or redundant work. See Hackett v. Xerox Corp. Long-Term Dis. Income Plan, 355 F. Supp. 2d 931, 935 (N.D. Ill. 2005) (trial court reduced requested attorneys' fees from $449,644.25 to $150,000 for fees and costs because court determined that the case was overstaffed with thirteen lawyers, six paralegals, two librarians, two law clerks, five proofreaders, one docket clerk, and four other individuals to litigate the case). Throughout the 173 pages of billing, the three main plaintiff's attorneys, George Wheeler, Stephen McDavid, and Michelle Joss, commonly triple billed for intra-office correspondence and conferences. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 949 (9th Cir. 2007) (affirming trial court's reduction of attorney hours for "unnecessary and duplicative" intra-office conferences); Cox v. Reliance Std. Life Ins. Co., 235 F. Supp. 2d 481, 484 (E.D. Va. 2002) (trial court reduced attorneys' fees for unnecessary duplicative work). The following excerpts are indicative of the "triple billing" the Court refers to above:

> 1/31/2006    GTW    Reviewed Case Management Order, correspondence to Mr. McDavid and Ms. Joss re Case Management Order, deadlines, discovery and summary judgment potential, correspondence to Mr. Ray                                         0.40
>
> SLM    Reviewed Case Management Order and conference re discovery                                                                     0.50
>
> MJ     Reviewed correspondence from Mr. McDavid re case management order, reviewed multiple correspondence from Mr. Wheeler re discovery and motion for summary judgment, reviewed answers of all defendants for admissions and possibility of motion for summary judgment, drafted correspondence to Mr. Wheeler and Mr. McDavid re same.                                                      1.0

| | | | |
|---|---|---|---|
| 3/2/2006 | GTW | Telephone conference with Ms. Joss re Coresource, conference call with Ms. Joss and Mr. McDavid, reviewed discovery propounded to defendants | 0.50 |
| | SLM | Reviewed email from attorney for Coresource, telephone conference with Mr. Wheeler and Ms. Joss re status and response | 0.40 |
| | MJ | Reviewed correspondence from Mr. Wheeler re Coresource's involvement, telephone conference with Mr. Wheeler re same, and conference with Mr. Wheeler and Mr. McDavid re same . . . | 1.0 |

Some of the time spent by plaintiff's counsel on specific matters is clearly excessive. For example, Plaintiff's counsel attributed 26.85 hours for a total of $6,103.00 drafting the complaint in this case. Moreover, those lawyers spent over sixteen hours discussing the case management order to be entered in this case at a cost of $2,396.75 to their client. After a careful review of the legal bills sent to BMHD, it is clear that the amount of time spent by the three plaintiff's attorneys was unreasonable.

In the thirty-five months from commencement to trial of this case, the plaintiff's counsel billed BMHD almost every day with the exception of seven months in which no time was billed. Indeed, in the months of April 2006, May 2006, June 2006, July 2006, December 2006, January 2007, February 2007, March 2007, February 2008, and June 2008, the plaintiff's counsel billed BMHD every day except twelve. Even though this litigation has spanned three years, thirty-eight complete weeks of billable hours is, in this Court's judgment, nevertheless excessive.

Crain asks that this Court reduce the attorneys' fees by the amount of time reasonably related to BMHD's claims against Coresource and NovaSys. Crain contends that as these entities were not obligated to pay any charges by BMHD, there is no explanation as to why BMHD should recover fees from Crain incurred to pursue those claims. By this Court's calculations, over 128 hours were

spent by plaintiff's counsel prosecuting their claims against Coresource and NovaSys. This amounts to over $21,000 in attorneys' fees attributable to these defendants.

BMHD joined NovaSys and Coresource by complaint on August 25, 2005. On October 17, 2007, the Court granted Coresource and NovaSys' motions to dismiss due to BMHD's institution of suit under ERISA. The Court noted that under ERISA, the hospital was preempted from bringing a state law cause of action against these defendants because the beneficiary in the case assigned his benefits under the plan to the hospital. Moreover, BMHD could not point to any contractual language binding those defendants to the hospital requiring them to pay the bill. BMHD failed to prevail on any of his claims against any of these defendants. Although the legal basis for suit against them was generally the same as the legal basis for suit against Crain Automotive, the relief they sought was not comprehended by ERISA.

Because BMHD was not successful in their claims against these defendants, the Court agrees with Crain that the time spent prosecuting these claims is not compensable by Crain. Time spent on totally unrelated claims on which plaintiff did not succeed should also not be compensated. As the Supreme Court has recognized, there is "no certain method of determining when claims are 'related' or 'unrelated.'" Hensley, 461 U.S. at 436, 103 S. Ct. 1933. In this case, the court is satisfied that a number of plaintiffs' claims on which they did not prevail are unrelated to the claims against Crain on which they did prevail. Thus, the Court finds that, given the different nature of the relief sought, all plaintiff's claims against any of the defendants, other than his claims against the Crain are unrelated. Thus, because plaintiff's counsel are not entitled to compensation for unrelated, unsuccessful claims, the fees associated with those matters should be subtracted out.

The Court also subtracts from Plaintiff counsel's bill all time charged to research the undersigned judge subsequent to confirmation. This information and the time spent is not solely

beneficial or pertinent to this litigation. Accordingly, the 3.75 hours, and $538.75 charged will be deducted.

Crain also contends that they should not have to pay for Fifth Circuit research necessary because BMHD hired out-of-state counsel. The Court finds this argument unpersuasive as each party has the right to be represented by counsel of their choosing.

In examining the Johnson factors, the Court notes that the time and labor involved in this case was not extraordinary. Because BMHD's claim was never *per se* denied, there was no administrative record to extensively review and no complex medical documentation. According to the docket, only three depositions were noticed, and only three dispositive motions were filed in this case. No extraordinary skill was required in prosecuting this case as it was not a complex multi-faceted ERISA case, but was comprised of many smaller ERISA issues. Moreover, aside from the hours expended, this case did not otherwise preclude counsel from taking other employment. As to undesirability of the case, there was nothing particularly undesirable about this case that would cause hardship to counsel in the community.

Based on its general review of the hours and fees spent in the various phases, and further supported by its consideration of the specific examples discussed above, the Court finds that the fees submitted by plaintiff minus those fees attributable to BMHD's claims against the dismissed defendants (totaling $21,076), and the fees charged to research the assigned judge ($538.75) should be reduced by fifty percent to eliminate excessive or duplicative expenditures of time. Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000) (district courts may "(in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage"). In a case brought by a hospital against a plan administrator for payment of medical services provided to a plan participant, plaintiff's counsel spent 676 hours and sought to

beneficial or pertinent to this litigation. Accordingly, the 3.75 hours, and $538.75 charged will be deducted.

Crain also contends that they should not have to pay for Fifth Circuit research necessary because BMHD hired out-of-state counsel. The Court finds this argument unpersuasive as each party has the right to be represented by counsel of their choosing.

In examining the Johnson factors, the Court notes that the time and labor involved in this case was not extraordinary. Because BMHD's claim was never *per se* denied, there was no administrative record to extensively review and no complex medical documentation. According to the docket, only three depositions were noticed, and only three dispositive motions were filed in this case. No extraordinary skill was required in prosecuting this case as it was not a complex multi-faceted ERISA case, but was comprised of many smaller ERISA issues. Moreover, aside from the hours expended, this case did not otherwise preclude counsel from taking other employment. As to undesirability of the case, there was nothing particularly undesirable about this case that would cause hardship to counsel in the community.

Based on its general review of the hours and fees spent in the various phases, and further supported by its consideration of the specific examples discussed above, the Court finds that the fees submitted by plaintiff minus those fees attributable to BMHD's claims against the dismissed defendants (totaling $21,076), and the fees charged to research the assigned judge ($538.75) should be reduced by fifty percent to eliminate excessive or duplicative expenditures of time. Harper v. City of Chicago Heights, 223 F.3d 593, 605 (7th Cir. 2000) (district courts may "(in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage"). In a case brought by a hospital against a plan administrator for payment of medical services provided to a plan participant, plaintiff's counsel spent 676 hours and sought to

recover $51,260.56 in fees for a five day bench trial in which 130 exhibits, and nine witnesses, including three experts, were introduced. Lutheran Med. Cent. of Omaha, NE v. Young, 814 F. Supp. 799 (D.C. Ne. 1993). The trial court awarded the costs but reduced the attorneys' fees by ten percent because the law firm customarily gave that discount to loyal clients that paid their bills on time. Id. at 804. Likewise, here, an across-the-board reduction in fees is warranted in order to satisfy the "reasonableness" test of 1132(g)(1).

Having made these determinations, the Court can hopefully compute what it deems to be fair and reasonable attorneys' fee. The computations are as follows:

| | |
|---|---:|
| Requested Attorneys' Fees: | $225,579.75 |
| Fees Attributable to Claims against NovaSys and Coresource | - $21,076 |
| Fees charged to research the undersigned judge | - $538.75 |
| | $203,965.00 |

This amount reduced by one half is $101,982.50. In addition to attorneys' fees, this Court grants the requested $8,978.98 in costs to the plaintiff for a total of $110,961.48.

*Conclusion*

The Court hereby grants in part and denies in part Plaintiff's Motion for Attorneys' Fees. Fees attributable to BMHD's inclusion of Coresource and NovaSys, as well as time spent researching the undersigned judge are not compensable under 29 U.S.C. Section 1132(g)(1). Also, as plaintiff's counsel expended unreasonable time performing duplicative and unnecessary work, the fees are further reduced by fifty percent. Accordingly, the Court awards to the plaintiff $110,961.48 in

attorneys' fees and costs.

SO ORDERED, this the 25th day of November, 2008.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**